CAMPBELL COUNTY et al. v. RIDENOUR.

SAME v. PERKINS.—120 S. W. (2d) 1000.

Eastern Section.   August 6, 1938.

Petition for Certiorari denied by Supreme Court, October 8, 1938.

Joe M. Agee and Joe M. Carden, both of La Follette, and Johnson & Johnson, of Knoxville, for plaintiffs in error.

Harry B. Brown, and Clarence Templeton, both of Jellico, and Jennings & O'Neil, of Knoxville, for defendants in error.

PORTRUM, J. These are two consolidated suits growing out of the same facts and are prosecuted against Campbell County and Frank Baird, Superintendent of Roads, to recover damages for the injuries of one plaintiff, suing by next friend, and for the wrongful death of another, suing by an administrator, upon the theory that the County, through its superintendent of roads, had created a nuisance by storing empty metal barrels which had been used

as asphalt containers in the repair of the county roads, and children playing around the stored empty cans were injured in an explosion caused by the ignition of the vapors within the empty cans by the lighting of a match by one of the children. Three children were blown up, two of them being killed and one being seriously burned and permanently injured; the administrator of one of the dead children sues, and the next friend of the other or injured child sues, and these two cases were tried together in the lower court; the jury returned a verdict in favor of the administrator in the sum of $6,000, and in favor of the minor through his next friend in the sum of $2,000, and from the judgments based upon these verdicts the County and the superintendent have appealed to this court.

As stated, the cause of action is predicated upon a nuisance created by the County, and the personal negligence of the superintendent of roads; it being claimed that the facts of the case fall within the doctrine announced in the case of Chandler v. Davidson County, 142 Tenn. 265, 218 S. W. 222. This case was decided in 1919 and the principles announced are familiar to the Bench and Bar, making it unnecessary to review the facts and state the principles again, since the case has been repeatedly analyzed and distinguished, one of the last of the cases being Scott v. Knox County, 166 Tenn. 585, 64 S. W. (2d) 185, decided in 1933, in which the cases referred to were cited and some reviewed. Because the issue has been so thoroughly analyzed and adjudicated in these reported cases the court will not make an extended analysis of the facts or review the principles announced; it is content to state the principal facts in this case and apply the principle, as the court understands the principle to be, to the facts in the case.

On and before September 30, 1935, Campbell County was engaged in the repair of its County highways, and in the construction of farm-to-market rural roads, using Federal fund in the prosecution of its work and the repair of the highways, which necessitated the employment of relief labor under the supervision of the State and Federal Government. Two of these County highways crossed at Newcomb, a village of about two to three hundred inhabitants in the County, and in this village, upon a vacant lot near the junction of these highways, the County had established what might be designated as a storage depot, where it piled its crushed rock and stored barrels containing asphalt, which ingredients were used in patching and repairing the highways, and in addition to these supplies there was stored upon this lot certain posts belonging to the County.

The road crew would take this crushed rock, mix it with the asphalt taken from the metal barrels, and then use the material in filling holes which had dug out in the macadam and was reveling into larger holes. This was the usual method in repairing macadam highways, and filling the holes which occurred because of the

use of the highway, and is the standard method in use throughout the State.

The contents of the barrels is a mixture of asphalt, gasoline, and nepthalene, so mixed as to maintain a consistency of sufficient fluidity to seep through and bind together the crushed rock, forming a solid mass after it is placed upon the highway. It is hardly necessary to further describe the process because it is familiar to all travelers upon the highways, they having observed the repair of the macadam highways, and have seen the application of this mixture with crushed rock placed in the holes upon the highway.

This substance within the barrels hardens with the falling temperature, and it becomes necessary to heat the substance when the temperature is below a certain point in order to run the substance out of the hole in the end of the barrel, for use in mixing with the rock; and when the temperature arises to around 83 degree Fahrenheit the substance throws off vapor or gas which is very explosive when coming in contact with a lighted match or a blaze or spark. When the heat without or within the barrel is at this degree, then if the fumes or gas is not confined there is danger of an explosion, but if the bung of the metal barrel is securely closed the fumes cannot escape and there is no danger from an explosion. This fact was established by the chemist introduced by the plaintiff who is positive in his statement that there is no danger of an explosion so long as the barrels are closed by the cap at the ventholes. At the end of the metal barrels there are two vents, or what is known as bungholes, one about two inches in diameter, and the other one somewhat smaller. The substance runs out of the large vent/when opened and air goes in through the small vent, facilitating the discharge of the thick substance from the metal containers. On Saturday preceding Friday October 25, 1935, the road crew had placed four barrels of this substance upon this storage lot in the town or village of Newcomb, and soon thereafter used the contents of one barrel and one-third of the contents of another, but the crew running out of the fine rock used with the coarser rock and the substance suspended this work. They left the four barrels upon the lot; the empty barrel contained perhaps a gallon of the substance which had stuck or adhered to the sides of the barrel in emptying it, and as stated another barrel had about two-thirds of the substance remaining in it. Children had been seen playing in this lot, and some of the little fellows lighting fires, and were cautioned not to set out fires because the weather was dry. Two of these barrels were uncorked and had been for a day or two, for it is shown that witnesses saw the children running sticks into the barrel and bringing out the tarry substance and playing with it. These barrels were closed by screwing a metal cap into the ventholes, which cap had a square knob or head which

was used by the application of a wrench in unscrewing or screwing on the cap. When securely fastened it was necessary to have a wrench to unscrew the caps to remove them, or it might be done with the use of heavy metallic instrument such as a pick which could be used in driving the head of the cap around, but if these caps were not screwed on the empty barrels securely, they might be removed by the use of the hand.

At this time of the day, while playing around these barrels, one of the children struck a match and attempted to throw it into the open barrel, causing the explosion and the death of two of the children and seriously burning another. This was a deplorable accident, a preventable accident, because it arose out of the negligence of someone, and the court, in working the record, has been solicitous for the injured child and the relatives of the deceased children; if the court could find a legal basis for a recovery upon their behalf it would gladly enforce the right, but this court has been unable to discover a theory of legal liability upon which to base a recovery for these plaintiffs.

In the first place, the court does not think that the County, through its officers, created an actionable nuisance, for the reason that it was absolutely necessary to use this substance in the repair of the road and a prudent man would have stored the substance at depots near convenient spots for distribution over the different roads, and it was too great a burden to place upon a prudent man to remove each empty barrel entirely off the highway or storage ground. The barrels were placed at a convenient distributing point, and two or more barrels were not any more dangerous than one barrel, and if it be a nuisance to place a barrel at this point, it likewise would be a nuisance, though a less nuisance, to place a barrel along the highway near the home of anyone, and to so adjudicate it would require the County to stand responsible for the injury growing out of the use of this substance in the barrels at any point upon the highway. Therefore, the counties of the State cannot use this substance without assuming responsibility for injury arising out of the ordinary handling of the substance in the barrels. The element of a nuisance is the wrongful use of one's property or right to the injury of another. In storing the barrels, empty or full, at a depot or along the highway, the County was lawfully using its property in a method that would have been pursued by the ordinary prudent person. In the construction of subways great quantities of dynamite are transported through different streets to the place of work; this dynamite might be exploded by someone carelessly shooting into it, but its transportation to the place is not a nuisance because it is necessary. Had it not been necessary it would have been a nuisance.

And, in the second place, the storing of these empty barrels,

or the full barrels for that matter, was not the contributing or the prime or proximate cause of the injuries; it is established without contradiction by the plaintiffs' witnesses that the substance was not dangerous unless the caps were removed. It was the duty of the road hands to keep the barrels securely fastened by the use of the caps, and the negligent failure of the road hands to securely fasten the barrels by the use of the caps was the prime and only cause for the injury sustained. Had the caps been in place there would have been no explosion; this is conceded for the two full barrels did not explode for the reason that the caps were securely placed. If the accident and injury is attributable to the negligence of a road-hand, or employee of the County, then all the cases hold there could be no recovery upon the theory of the creation of a nuisance. But for the negligence of the road-hand there was no danger, and being no danger there was no civil wrong done anyone, and no right of action arose in the absence of injuries or wrongs.

▆▆▆ There is no right of recovery against the superintendent of roads individually. He was not present and did not participate in the negligent conduct of the road-hands in not securely placing the caps in the bungholes. It is admitted that it was the duty of the road-hands to so replace the caps. The only evidence upon which it is sought to hold the superintendent is that he passed this storage lot a time or two and could, by making due observation, have discovered the negligent conduct of the road-hands. And it is insisted that he is chargeable with that knowledge which he should have discovered. His failure to make this discovery is but an act of nonfeasance, and a public officer is not liable individually for acts of nonfeasance (Binkley v. Hughes, 168 Tenn. 86, 73 S. W. (2d) 1111), but holding him to a stricter accountability in his failure to discover the negligence of the road-hands and holding him guilty of misfeasance, still he is not personally liable because he is not charged with the willful failure of duty which is necessary, and a failure to discover an observable fact, unless one were looking for it, cannot be classified as willful conduct or negligence (Fryar v. Hamilton County, 160 Tenn. 216, 22 S. W. (2d) 353).

▆▆ The road-hands who committed the negligent act were not the superintendent's agents or employees, and he is not accountable upon the principle of master and servant. (See above cited authorities.)

▆▆ ▆▆ At the time of the storing of these barrels and of the injuries, this work was being carried on under the supervision and direction of State authorities, expending the gasoline fund and the WPA money, under a contract requiring the employment of destitute or persons on relief, and under the contract in performing this particular work the only right retained in the superintendent was

the right to designate or approve the foremen employed and retained by the State authorities. A resolution of the County Court attempting to comply with the Act of the Legislature and authorizing the expenditure of the County's gasoline money by the State Highway Department expressly provided that the superintendent should retain his official duties, but the contract, made upon a printed form furnished by the State, designated the supervision and control and engineering of this work to be under the supervision of the State authorities, and acting upon this contract the superintendent did not attempt to exercise any of his official duties in the control of the work or the manner of its performance. Of course he cannot contract away his official duties and he may misinterpret the law and abandon duties that he should perform, but if he does, he is only responsible for an act of nonfeasance, and he cannot be held liable for not performing his duties as he should have performed them.

On September 30 he was enjoined by a citizens' suit from performing his duties as superintendent of roads. The trustee was enjoined from paying out funds upon his order, and ten days later the citizens through their lawyers agreed with the trustee and the lawyer representing him to abandon the injunction, but the superintendent of roads was not notified of this abandonment of the injunction, and we account for this for the reason that the work was being carried on by the State's Relief officers and it was not thought important to notify the superintendent of roads of the abandonment of the injunction. He was not notified and he did not exercise his right of office, other than to draw a salary and occasionally go upon the road; he did not attempt to direct or control the work. He was obeying the injunction. The fact the injunction had been dissolved makes no difference. He cannot be held for an act of willful misfeasance in not supervising and controlling the road work at a time when he thought he was enjoined from interfering with the control or management of this work.

The court finds no liability either against the County or the superintendent of roads. The judgment of the lower court is reversed and the cases are dismissed.

Ailor and McAmis, JJ., concur.